UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOELL G.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

23-CV-536-LJV
DECISION & ORDER

On June 14, 2023, the plaintiff, Joell G. ("Joell"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she is not disabled.[2] *Id.* On September 13, 2023, Joell moved for judgment on the pleadings, Docket Item 7; on October 10, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on October 24, 2023, Joell replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Joell applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Joell's motion in part and denies the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I. THE ALJ'S DECISION

On March 17, 2022, the ALJ found that Joell had not been under a disability from November 24, 2018, through the date of the decision. *See* Docket Item 5 at 36–37. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 21–23.

At step one, the ALJ found that Joell had not engaged in substantial gainful activity since November 24, 2018, the alleged onset date. *Id.* at 23. At step two, the ALJ found that Joell suffered from five severe, medically determinable impairments: "bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), major depressive disorder, and multiple substance use disorder." *Id.* at 23–25.

At step three, the ALJ found that Joell's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 25–29. More specifically, the ALJ found that Joell's impairments did not meet or medically equal listing 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma and stressor-related disorders). *Id.* at 25. In assessing Joell's mental

impairments, the ALJ found that Joell was: (1) not impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing herself. *Id.* at 25–28.

The ALJ then found that Joell had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Joell can] never climb ladders, ropes, or scaffolds[,] and [can] have occasional concentrated exposure to dangerous moving machinery and unprotected heights, due to alleged medication side effects. She can work in a low stress job, defined as having only occasional changes in the work setting, [but cannot have] fast-paced assembly line production work. She can occasionally interact with the public, coworkers, and supervisors after the probationary period.

*Id.* at 29.

At step four, the ALJ found that Joell could no longer perform any past relevant work. *Id.* at 35. But given Joell's age, education, and RFC, the ALJ found at step five that Joel could perform substantial gainful activity as a dishwasher, floor waxer, or marker. *Id.* at 35–36; *see Dictionary of Occupational Titles* 318.687-010, 1991 WL 672755 (Jan. 1, 2106); *id.* at 381.687-034, 1991 WL 673262 (Jan. 1, 2016); *id.* at 920.687-126, 1991 WL 687992 (Jan. 1, 2016). The ALJ therefore found that Joell had not been under a disability from the alleged onset date through the date of the decision. *See* Docket Item 5 at 36; *see also id.* at 21.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II. ALLEGATIONS

Joell argues that the ALJ erred in two ways. *See* Docket Item 7-1 at 16–23. First, she argues that the ALJ failed to reconcile the RFC with limitations in the opinion of John Miller, Ph.D.—an opinion the ALJ found to be "partially persuasive." *Id.* at 16–19. Second, she argues that the ALJ failed to acknowledge consistencies between Dr. Miller's opinion and the opinions of Nurse Practitioners Paula Leszak and Isabel Molina. *Id.* at 19–23. This Court agrees that the ALJ erred and, because that error was to Joell's prejudice, remands the matter to the Commissioner.

## III. ANALYSIS

### A. Dr. Miller's Opinion

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024). So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On May 30, 2020, Dr. Miller completed a psychiatric evaluation of Joell. *See* Docket Item 6 at 163–68. Dr. Miller opined that Joell had no limitations in understanding, remembering, or applying simple instructions; using reason and judgment to make work-related decisions; maintaining personal hygiene; dressing appropriately; and being aware of normal hazards and taking appropriate precautions. *Id.* at 166. And Dr. Miller found that Joell had only moderate limitations in understanding, remembering, or applying complex instructions and interacting appropriately with supervisors, coworkers, and the public. *Id.* But Dr. Miller found that Joell had marked limitations in three areas: sustaining concentration and performing at a consistent pace; sustaining an ordinary routine and regular work attendance; and regulating emotions, controlling behavior, and maintaining well-being. *Id.*

The ALJ found Dr. Miller's opinion to be "partially persuasive." Docket Item 5 at 31. More specifically, the ALJ credited "Dr. Miller's examination findings because he personally interviewed [Joell]," and he credited Dr. Miller's diagnoses of bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, and substance use disorder (in remission). *Id.* (citing Docket Item 6 at 163–168). But the ALJ determined that Dr. Miller's finding of marked mental and behavioral limitations was unpersuasive, Docket Item 5 at 31–32, contrasting Dr. Miller's single examination with five years of "largely unremarkable" mental health treatment records from BestSelf Behavioral Health. *Id.* at 30–31 (citing *id.* at 697–885 (2016-2018 records)); Docket Item 6 at 481–1289 (2018-2021 records), 1301–1499 (same)). The ALJ found that the BestSelf treatment records demonstrated "satisfactory attention and concentration, intact

memory, average intelligence, and marginal to fairly good insight and judgment." Docket Item 5 at 30.

There are several problems with the ALJ's conclusion. First, as Joell correctly observes, the ALJ did not even mention Dr. Miller's findings of marked limitations in sustaining regular attendance at work and performing tasks at a consistent pace, nor did the ALJ account for such limitations in the RFC. *See* Docket Item 7-1 at 18–19. Because those limitations obviously would impact Joell's ability to hold a job, that alone is reason to remand. *See Raymer v. Colvin*, 2015 WL 5032669 at *6 (W.D.N.Y. Aug. 25, 2015) (remanding where ALJ gave "considerable weight" to a medical opinion yet "completely ignored in his decision some of the limitations identified"); *Caternolo v. Astrue*, 2013 WL 1819264 at *9 (W.D.N.Y. Apr. 29, 2013) (finding error in ALJ assigning "significant weight" to a medical opinion while "completely disregard[ing] the portion of the report that would have led to a finding of disability.").

The Commissioner argues that the ALJ implicitly addressed those limitations. *See* Docket Item 8-1 at 9–11. More specifically, the Commissioner says that "[t]he ALJ analyzed Dr. Miller's examination and resultant opinion in great detail, over the course of an entire single-spaced page." *See id*. at 9. And the ALJ indeed found that Joell "consistently attended her medical appointments for many years" and that "status examinations from her providers in the record consistently found her attention and concentration to be satisfactory." Docket Item 5 at 32 (citing Docket Item 6 at 481–1289); *see, e.g.*, Docket Item 6 at 482 (finding attention and concentration "both

satisfactory" in 2018), 503 (finding same in 2019), 846 (confirming "normal" attention and concentration in 2020).[5]

But consistently attending medical appointments from time to time does not equate to working every day. *See Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022) (ALJ's reliance "on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment."). And being able to maintain attention and concentration during even a lengthy medical exam does not evidence the ability to maintain attention and concentration during an entire work day. So even if the Commissioner is correct in suggesting that the ALJ implicitly addressed the limitations that Dr. Miller found, and even if implicitly addressing explicit limitations is good enough, the ALJ's analysis here fell far short.

What is more, when an ALJ finds a provider's opinion to be persuasive, the ALJ must either include the limitations in that opinion in the RFC or explain why he did not do so. *See Kimberly J. v. Comm'r of Soc. Sec.*, 725 F. Supp. 3d 305, 309 (W.D.N.Y. 2024) ("When an ALJ adopts only parts of a medical opinion, he must explain why the other parts were rejected.") (citation modified); *Cynthia A. v. Comm'r of Soc. Sec.*, 2023 WL 6229600, at *4 (W.D.N.Y. Sept. 26, 2023) (finding error where an ALJ found medical opinions "at least partially persuasive" but included only "some of the limitations to which they opined" without explanation for excluding the remainder). At the very

[5] The Commissioner argues that ALJ explicitly addressed other limitations in Dr. Miller's opinion that are related to the limitations in maintaining pace and attending work. Docket Item 8-1 at 10. But the fact that the ALJ addressed and rejected other parts of Dr. Miller's opinion does not remedy the failure to address limitations that would have such a crucial impact on Joell's ability to work.

least, the ALJ must "provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled so that . . . 'a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Younger v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). By not even mentioning Dr. Miller's findings about attendance and maintaining pace—let alone giving good reason for not addressing them in the RFC—the ALJ certainly did not provide this Court with the required "accurate and logical bridge" here.

Moreover, the ALJ rejected similar limitations in other medical opinions without addressing the similarity among those opinions and between those opinions and Dr. Miller's. For example, the ALJ found the opinions of two of Joell's treating providers, NP Leszak and NP Molina, to be "unpersuasive." Docket Item 5 at 32–34. Along the same lines, the ALJ found the opinions of state agency evaluators Kimberly Lieber-Diaz, Psy.D., and D. Brown, Psy.D,[6] to be only partially persuasive, rejecting their limitations on concentrating and maintaining pace. *Id*. at 34. Both because that ignored the substantial agreement about Joell's mental limitations and because that resulted in the ALJ creating an RFC from whole cloth, that was error. *See Jennifer S.-M. v. Comm'r of Soc. Sec.,* 2023 WL 3455435, at *9 (W.D.N.Y. May 12, 2023) (remanding where the "ALJ rejected all of the opinion evidence regarding [p]laintiff's mental functioning and, therefore, lacked any guidance from a medical professional to ensure that the RFC finding adequately accounted for [p]laintiff's mental limitations.") (citation modified).

---

[6] Dr. Brown is identified only as "D. Brown" in the record and the parties' submissions.

After a consultation in 2021, NP Leszak opined that Joell would be "off-task" or "unable to perform work and/or away from [] work" more than 30% of the day; she also opined that Joell would be absent from work more than four days per month because Joell was "afraid to leave the house." Docket Item 6 at 1295–96. Along the same lines, NP Molina found that Joell was very limited in her ability "to function in a work setting at a consistent pace." *Id*. at 461. Dr. Lieber-Diaz found that Joell's "ability to maintain attention and concentration," "complete a normal workday and workweek without interruptions," and "perform at a consistent pace" all were moderately limited. Docket Item 5 at 104–05. And Dr. Brown likewise found that Joell was moderately limited in "maintain[ing] attention and concentration for extended periods," "perform[ing] at a consistent pace," and "complet[ing] a normal workday and workweek without interruption from psychologically based symptoms." *Id.* at 133.

The ALJ found that all those opinions were either "not persuasive" or only "partially persuasive." *Id.* at 32–34. And she rejected those opinions insofar as they found that Joell was significantly limited in the ability to concentrate, work at a consistent pace, and regularly attend work. *Id.* For example, the ALJ found NP Leszak's opinion that Joell would be off-task and absent from work "inconsistent" with a "record [that] shows [] she was capable of attending regular appointments over the course of her treatment." *Id.* at 32–33. The ALJ rejected NP Molina's opinion in part because of what she said was medical evidence supporting only "mild limitation[s] in [Joell's] ability to concentrate, persist, or maintain pace[.]" *Id.* at 33. And the ALJ rejected Dr. Brown's and Dr. Lieber-Diaz's findings of limitations in concentrating and maintaining pace because "the claimant attended trade school" and because non-

opinion treatment records demonstrated acceptable intelligence, memory, attention, and concentration. *Id.* at 34 (comparing *id.* at 101–05 (Dr. Lieber-Diaz), 127–35 (Dr. Brown) with Docket Item 6 at 481–1289 (BestSelf Records)).

The ALJ's conclusions ignored the striking similarity among all those opinions and between those opinions and Dr. Miller's opinion. Moreover, without the opinions of Dr. Miller, Dr. Lieber-Diaz, Dr. Brown, NP Leszak, and NP Molina, the ALJ was left with only raw medical data as support for an opinion that disagreed with all the medical professionals.[7] Stated another way, the ALJ's opinion that Joell could regularly attend work and maintain pace was at odds with the opinions of all the doctors and other medical professionals who treated Joell. And an ALJ may not substitute her lay judgment for the opinions of medical professionals and create an RFC from whole cloth. *See Ortiz v. Colvin*, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018) (citation modified) (Because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, . . . an ALJ's determination of [a claimant's] RFC without a medical advisor's assessment is not supported by substantial evidence."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled [sic] that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion.") (citation modified).

---

[7] The ALJ similarly rejected the only other opinion in the record, that of Hongbiao Liu, M.D. *See* Docket Item 5 at 24. Because Dr. Liu completed an internal medicine examination, however, he did not opine as to Joell's mental limitations. Docket Item 6 at 332–35.

In sum, the ALJ did not even mention limitations in what she found to be the "partially persuasive" opinion of Dr. Miller's—limitations that that may well have affected Joell's ability to work. And even if the ALJ implicitly addressed those limitations as the Commissioner suggests, she failed to address the similarity between Dr. Miller's opinion and the opinions of the other medical providers, as well as the similarity among all the opinions in the record. In doing so, the ALJ improperly "set [her] own expertise against that of [the] physician[s]." *See Balsamo*, 142 F.3d at 81 (quoting *McBrayer v. Sec'y of Health and Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)) (citation modified). For all those reasons, the RFC was not supported by substantial evidence and remand is required. *See generally John G. v. Saul*, 2021 WL 118313, at *4 (W.D.N.Y. Jan. 13, 2021) (citing *Garcia Medina v. Comm'r of Soc. Sec.*, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019)) ("The [RFC] here was not tethered to any particular medical opinion evidence. Indeed, the ALJ gave 'limited weight' to all three of the opinions she addressed. Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further.").

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Joell's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: November 23, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE